August A. Busch & Co. of Mass., Inc. *v.* Liberty Mutual Ins. Co.

AUGUST A. BUSCH & COMPANY OF MASSACHUSETTS, INC. & another *vs.* LIBERTY MUTUAL INSURANCE COMPANY & another.

Suffolk. December 5, 1958. — May 18, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Insurance*, Motor vehicle liability insurance, Construction of policy. *Motor Vehicle*, Loading or unloading. *Words*, "Use," "Unloading."

In construing an insurance policy written at a time when a certain word therein had been given varying judicial constructions, any doubt as to the meaning of that word as used in the policy must be resolved against the insurer in favor of the insured. [242-243]

A motor vehicle liability insurance policy written in 1949, insuring a lessee of a motor truck against liability to pay damages to others for bodily injury caused by the "use" of the truck and providing that "use of the motor vehicle . . . includes the . . . unloading thereof," covered operations of the lessee's employees in removing cartons of bottles from the truck in front of a restaurant to which the lessee was delivering them, stacking the cartons on the sidewalk, placing them on a hand truck and taking them down an alley to a side door of the restaurant, stacking them on the ground there, sliding them down a chute through an opened trap door to the restaurant cellar and placing them on the cellar floor, and then putting them into an ice chest, and covered liability of the lessee for personal injuries sustained by a prospective customer of the restaurant attempting to enter it when he fell through the open trap door as the cartons were being put into the ice chest. [243]

BILL IN EQUITY, filed in the Superior Court on October 20, 1953.

The suit was reported by *Pecce, J.*

*Thomas D. Burns & Frank L. Kozol,* for the plaintiffs.

*Thomas H. Mahony, (Edward F. Mahony & George T. Padula* with him,) for the defendants.

WILLIAMS, J. This is a suit in equity under G. L. c. 231A which is reported without decision on the bill as amended, the answer, and the statement of agreed facts. The plain-

tiffs are August A. Busch & Company of Massachusetts, Inc., and Zurich General Accident and Liability Insurance Company, Ltd., the latter being added on motion. The defendants are Liberty Mutual Insurance Company and U-Dryvit Auto Rental Company, Inc. Reference to the parties is hereinafter made by abbreviated designation. The issues sought to be determined are the respective liabilities of the two insurance companies on liability insurance policies in the circumstances to be described.

On July 5, 1949, Busch, a corporation engaged in the manufacture and sale of bottled beer and ale, was the lessee of a motor truck owned by U-Dryvit. Busch had a so called "Comprehensive General and Automobile Policy" issued by Zurich insuring it against liability to pay damages "because of bodily injury . . . sustained by any person or persons and caused by accident." The limit of liability for bodily injury was stated to be $100,000 for each person, with the qualifying provision that with respect to motor vehicles leased by Busch from U-Dryvit the "insurance afforded shall operate only as excess insurance over and above the amount of $10,000 for bodily injury to each person and subject to that limit for each person." U-Dryvit had a motor vehicle liability policy issued by Liberty which was applicable to the said leased truck while used by Busch. This policy purported to insure the lessee against liability to "pay . . . damages to others for bodily injury' . . . caused by the ownership, operation, maintenance, control or use of the motor vehicle." It was declared in the policy that "use of the motor vehicle for the purposes stated includes the loading and unloading thereof." This policy stated that the limit of liability for bodily injury was $10,000 for each person and provided that "the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability . . . bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

On the date above mentioned Busch was using the truck to deliver cartons of bottled beer to a restaurant on Essex

Street in Boston. "Busch employees stopped this truck at Essex Street, a public way in Boston, at the corner of Hersey Place, in front of Ort's Restaurant and Grill, Inc., . . . which fronted on Essex Street. The driver and helper then removed fifty cartons of bottled beer from the truck and stacked them on the Essex Street sidewalk. Thereafter they placed these cartons — five at a time — upon a hand-operated two-wheeled roller or truck and pushed the truck fifty-five to sixty feet down the alley called Hersey Place, which ran from Essex Street along one side of Ort's. They then removed the cartons from this roller and stacked them on the ground in Hersey Place, by a side door leading into Ort's restaurant. A board or chute or skid was then arranged to slide the cartons from the alley, through an opened trap door inside the said door and in the floor to Ort's cellar. The cartons were then moved down this chute to the cellar floor and placed on the floor. Thereafter the Busch employees went to the cellar, and the cartons were being put into an ice chest, with the assistance of two employees of another brewer who were preparing to deliver ten barrels of beer through this same side door and trap door. While the cartons were being put into the ice chest, a prospective customer of the restaurant, John Smith, undertook to enter Ort's through this alley door, fell through the open trap door to the cellar and was injured. John Smith sued Ort's and Busch as joint tortfeasors for negligently causing personal injuries and recovered judgment against both in the sum of $26,815.64 as damages, and $217.55 as costs. Of this sum, Ort's or Ort's liability insurer paid approximately $13,376.69 and Zurich on behalf of Busch under a loan receipt paid approximately the same amount."

The question for decision is whether Liberty is obligated to pay Busch $10,000 on account of the damages paid to Smith and $217.55 on account of costs, with interest thereon.

The case presents for the first time in this Commonwealth the question of the extent of coverage provided by a clause in a motor vehicle liability policy that the "use" of a motor

vehicle shall include its loading and unloading. In other jurisdictions judicial opinion has differed (see cases collected in 160 A. L. R. 1251). A substantial number of courts have followed the so called "coming to rest" doctrine, *Stammer* v. *Kitzmiller*, 226 Wis. 348, *American Cas. Co.* v. *Fisher*, 195 Ga. 136, *St. Paul Mercury Indem. Co.* v. *Standard Acc. Ins. Co.* 216 Minn. 103, while others have adhered to the "complete operation" rule. *State* v. *District Court*, 110 Mont. 250. *Wheeler* v. *London Guar. & Acc. Co.* 292 Pa. 156. *Pacific Auto. Ins. Co.* v. *Commercial Cas. Ins. Co.* 108 Utah, 500. *B & D Motor Lines, Inc.* v. *Citizens Cas. Co.* 181 Misc. (N. Y.) 985 (affirmed without opinion in 267 App. Div. [N. Y.] 955, leave to appeal denied without opinion in 268 App. Div. [N. Y.] 755). Persuasive reasons have been advanced in support of each construction. It is plain that the insertion of the loading and unloading clause in the Liberty policy was intended not to restrict the coverage otherwise afforded as to use of the motor vehicle but to extend the meaning of "use." *Pacific Auto. Ins. Co.* v. *Commercial Cas. Ins. Co.* 108 Utah, 500. *Ferry* v. *Protective Indem. Co.* 155 Pa. Super. Ct. 266. (Compare *LaMontagne* v. *Kenney*, 288 Mass. 363, 367.) Since the physical process of placing goods in or on a motor vehicle or in removing them from the vehicle plainly would be a use of the vehicle for those purposes, it is reasonable to conclude that the clause must have been intended to cover something more. We are concerned only with the connotation of the word "unloading."

When the policy was written in 1949 the meaning of that term when contained in motor vehicle liability policies was as above suggested, subject to varying judicial construction. The weight of authority seems to have supported the rule of "complete operation," that is, the operation of not only removing goods from the motor vehicle but of their delivery to the purchaser or consignee rather than the more restricted doctrine that the unloading has ended when the goods have come to rest. In drafting its policy Liberty could not have been unaware of the current differences in

opinion respecting the interpretation of the clause and therefore of its recognized latent ambiguity of meaning. In view of this ambiguity, doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured. *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467, 471–472. *Fuller* v. *Home Indem. Co.* 318 Mass. 37, 42. *Rezendes* v. *Prudential Ins. Co.* 285 Mass. 505, 511. *Reynolds* v. *John Hancock Mut. Life Ins. Co.* 312 Mass. 102, 104. *Woogmaster* v. *Liverpool & London & Globe Ins. Co. Ltd.* 312 Mass. 479, 481, and cases cited. They must be construed in the sense that the insured was reasonably given to understand was intended to be their scope.

What Busch would naturally understand was the extent of the coverage afforded by the policy may readily be inferred. It had hired the truck to use in its business which involved the transportation and delivery of its products to customers. Its use of the truck was the means adopted to effect such delivery and the physical removal of goods from the truck was merely incidental to accomplishment of the final objective. From its point of view unloading would mean a continuous transaction ending with the deposit of the goods in the hands of the purchaser. That the insured would so interpret the meaning of unloading ought to have been expected by the writer of the policy. At least from past controversies between insurers and insured over the construction of the term it should have realized that the insured would be warranted in so construing it. We think the policy must be held to have insured Busch against liability to pay the damages resulting from the personal injury to Smith.

Liberty therefore is obligated to pay Busch $10,000 on account of the sum advanced for damages by Zurich for Busch on a loan receipt, $217.55 for costs also so advanced, and interest on the whole amount. There is no merit in Liberty's contention that if liable it is responsible for only a percentage of its $10,000 coverage. There was no coverage by Zurich in respect to the first $10,000 of the damages

recovered by Smith and the provision in Liberty's policy as to proportional liability where other insurance is collectible does not apply.

Let a decree be entered declaring that the liability of Busch for the accident to Smith was within the coverage of Liberty's policy and ordering that it pay Busch the amounts herein set forth.

*So ordered.*