F. W. Woolworth Company & others *vs.* Lumbermens Mutual Casualty Company & others.

Suffolk. December 5, 1968. — January 15, 1969.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Reardon, JJ.

*Insurance,* Motor vehicle liability insurance. *Motor Vehicle,* Loading or unloading. *Words,* "Use," "Loading or unloading."

Where it appeared that the driver of a motor truck stopped it at the curb of a street near a store in order to deliver goods to the store, placed the goods on the tailgate of the truck, and obtained a receipt and payment for the goods, that an employee of the store removed the goods to the sidewalk near a chute underneath an opening in the sidewalk, that while the store employee was in process of throwing the goods down the chute a pedestrian fell into the chute and was injured, and that a motor vehicle liability insurance policy covering the truck included coverage for liability arising out of "use" of the truck, included as an insured any person "while using" the truck with the permission of the named insured, and included "loading and unloading" of the truck in "use" thereof, it was held that the unloading of the truck had ended when the accident occured, that the proprietor of the store and its employee then were not "using" the truck and were not insureds under the policy, and that the insurer was not liable for the pedestrian's injuries.

BILL IN EQUITY filed in the Superior Court on September 7, 1960.

The suit was heard by *Smith, J.*

*David W. Kelley,* for the plaintiffs, submitted a brief.

*John J. C. Herlihy* for the defendant.

CUTTER, J. The bill seeks declaratory relief and to require Lumbermens Mutual Casualty Company (Lumbermens) to reimburse F. W. Woolworth Company (Woolworth) and Travelers Insurance Company (Travelers) for part of the sums paid by Woolworth and Travelers in settlement of a claim by Edith Ervin. Lumbermens had issued a motor vehicle liability insurance policy to its insured, Hopkins Transportation, Inc. (Hopkins). The trial judge made findings, which were adopted by him as a report of material facts. By final decree it was declared that the accident to Miss Ervin "was caused by and arose out of the use and unloading of the truck" of Hopkins by Woolworth and its employees Pisoni and Pillsbury. Lumbermens was ordered to pay $3,566.66 each to Woolworth and Travelers with interest. Lumbermens appealed, as did Woolworth, Pisoni, Pillsbury, and Travelers. The evidence is reported.

1. Lumbermens first contends that all unloading had ceased when Miss Ervin was injured. The trial judge found "as a fact that the unloading had not [then] ceased." His subsidiary findings, summarized below, concerning what had happened are justified by the evidence.

Woolworth operated a store in Arlington. Travelers had issued a public liability policy covering the premises. This was in effect on February 5, 1959, when Miss Ervin was injured. On that day Leo Lanza, a driver employed by Hopkins, was delivering merchandise to the Woolworth store in Hopkins's duly registered truck. Lanza was alone on the truck. He stood his truck near the curb, parallel with the store. The rear end of the truck was near a chute. Lanza went into the store and called for someone to receive the merchandise. He then returned to his truck, and put the merchandise on the tailgate of his truck. He placed

none of it on the sidewalk himself.  Pisoni, a Woolworth employee, began to take off the cartons as Lanza placed them on the tailgate.  Pisoni put them on the sidewalk.  When Pisoni had removed some of them, Lanza had him check the invoice and sign for the goods.  Lanza went into the store to collect his charges.  He returned in a few minutes and saw Pisoni near a chute beneath an opening in the sidewalk, about to throw the freight down the chute.  The chute lay under two metal covers in the sidewalk.  One cover had been raised and propped up with a carton, so that (as photographs in evidence show) one door about two feet in height obstructed foot travel along some five to six feet of the width of the sidewalk.  Lanza heard Pisoni cry out, and saw Miss Ervin, about eighty years old, "fall right into the chute."  Lanza and Pisoni then went down a flight of stairs leading to the store basement to assist her.

Pillsbury, the store manager, had previously gone with Pisoni to the sidewalk to receive the merchandise, but had been called to the telephone.  The merchandise from the truck was in the area between the chute and the curb in the immediate area of the store.  Some bundles had already been thrown down the chute when Miss Ervin fell.  Some remained on the sidewalk.  After Lanza received the money for the delivery, he returned to his truck and did nothing further with the bundles.

Lumbermens' motor vehicle policy, issued to Hopkins, insured under coverage B the liability arising out of "ownership, maintenance, or use of the motor vehicle."[1]  "Coverage B — Bodily Injury Liability — Other than Statutory" was extended by Clause III of the insuring agreements to include the actual use (fn. 1) of the vehicle with the permission of the owner.  Under the declarations attached to the policy, under coverage B "use of the motor vehicle" included "loading and unloading."  The dispute concerns the inter-

---

[1] Under coverage B (emphasis supplied), "the unqualified word 'insured' includes the named insured . . . and also . . . *any person while using the motor vehicle* and any person . . . legally responsible for the use thereof, *provided the actual use . . . is* by the named insured . . . or *with the permission*" *of the named insured.*

pretation and application of the words "use" and "loading and unloading" in the Lumbermens policy. Lumbermens claims that, when Lanza received a signed receipt for the merchandise and payment of his charges, the goods had come to rest and liability under its policy ceased. Travelers takes the position that the unloading had not ceased.

We apply the principles stated in *August A. Busch & Co. of Mass. Inc.* v. *Liberty Mut. Ins. Co.* 339 Mass. 239, 241–243, in deciding whether this accident was covered at all, under the "unloading" provisions applicable to coverage B of Lumbermens policy. In the *Busch* case, we held that a somewhat similar policy was intended to extend the coverage of "use of the . . . vehicle" to include "unloading" in the sense of (p. 242) "delivery to the . . . consignee rather than the more restricted doctrine that the unloading has ended when the goods have come to rest." We adopted the so-called "complete operation" rule and rejected the "coming to rest" doctrine, but we said (at p. 243) that for Busch, the insured hirer of the vehicle there unloaded, "unloading would mean a continuous transaction ending with the deposit of the goods in the hands of the purchaser." In the *Busch* case, Busch's employees, when the accident happened (p. 241), were still in the consignee's cellar putting cartons "into an ice chest, with the assistance of two employees of another brewer who were preparing to deliver . . . beer through this same side door and trap door." They were still participating in the unloading process, whereas in the present case Lanza had completely finished all work in which he had participated at all or apparently was expected to participate. He had obtained a signed receipt and had been paid. He had no part in removing the merchandise from the tailgate, in placing it on the sidewalk, or in throwing it down the chute. So far as appears, he had nothing left to do except to remove the Hopkins truck from the curb.

Later Massachusetts cases do not shed much light on when unloading comes to an end. In *Nichols & Co. Inc.* v. *Travelers Ins. Co.* 343 Mass. 494, 496–498, the policy issued

to the truck owner provided a narrower coverage B than that in the present case. The case is distinguishable from the present case, where under coverage B, it is necessary only to show that Woolworth's employees, with the consent of Hopkins, were using the truck at the time of the accident. In *Travelers Ins. Co.* v. *Safeguard Ins. Co.* 346 Mass. 622, 624, it was held that delivery of goods by a store clerk to a private automobile did not make him one using the vehicle and thus he was not an unnamed insured on the motor vehicle liability policy. In *Improved Mach. Inc.* v. *Merchants Mut. Ins. Co.* 349 Mass. 461, 464, use of a forklift directly in loading a truck was held to be sufficiently a use of the truck to make the forklift operator a user of the truck with the consent of the named insured. In *Travelers Ins. Co.* v. *American Hardware Mut. Ins. Co.* 349 Mass. 768, acts with a forklift "preparatory to loading" were held not to be within a loading and unloading clause and not to constitute use of a truck standing within ten feet of where the forklift was being used. Cf. *Wagman* v. *American Fid. & Cas. Co. Inc.* 304 N. Y. 490, 493–496, where the New York court gave a broader interpretation of the terms "loading" and "use" than does the *Busch* case (339 Mass. 239, 243), even though in the *Wagman* case the injury occurred while the trucker's employees remained engaged in the still continuing loading process. Cf. also *Lumbermens Mut. Cas. Co.* v. *Employers' Liab. Assur. Corp.* 252 F. 2d 463, 465–466 (1st Cir.).

The authorities are not uniform. See Appleman, Insurance Law and Practice (1962) §§ 4322–4324, 4354.[2] Despite a tendency in some decisions elsewhere to apply the so-called

[2] Cases not imposing liability include: *Pavlik* v. *St. Paul Mercury Ins. Co.* 291 F. 2d 124, 126 (7th Cir.); *San Fernando Valley Crane Serv. Inc.* v. *Travelers Ins. Co.* 229 Cal. App. 2d 229, 236. Cases imposing liability include: *Connecticut Indem. Co.* v. *Lee,* 168 F. 2d 420, 425 (1st Cir. — opening of elevator doors by truck driver); *St. Paul Mercury Ins. Co.* v. *Huitt,* 336 F. 2d 37, 42–44 (6th Cir.); *Allstate Ins. Co.* v. *Valdez,* 190 F. Supp. 893, 894–897 (D. Mich.); *Lamberti* v. *Anaco Equip. Corp.* 16 App. Div. 2d (N. Y.) 121, 124–126; *Lowry* v. *R. H. Macy & Co. Inc.* 119 N. Y. S. 2d 5, 8–9 (Supr. Ct.); *Bobier* v. *National Cas. Co.* 143 Ohio St. 215; *Pacific Auto Ins. Co.* v. *Commercial Cas. Ins. Co.* 108 Utah, 500, 511. Cf. *Travelers Ins. Co.* v. *Buckeye Union Cas. Co.* 172 Ohio St. 507, 514–515.

"complete operation" very broadly, our decisions have not gone so far. They have proceeded on a case by case basis in determining what constitutes a "complete operation." Where the named insured trucker or his employees have become engaged and are still engaged directly in the loading or unloading process, or should be thus engaged, or are doing something reasonably connected with the process, there is reason for construing the motor vehicle coverage broadly to protect them. That is why the trucker pays premiums. Our cases do protect them. Third persons still participating with the trucker and his employees also are protected. The situation should be different, however, as to the coverage of third persons when a trucker and his employees have made the delivery they were reasonably expected to make and have ceased to participate.

We apply the language of the *Busch* opinion, 339 Mass. 239, 243, that unloading means "a continuous transaction ending with the deposit of the goods in the hands of the purchaser." In the present case, if Hopkins's employee Lanza had been doing what Pisoni was doing when the accident took place, we assume that he would have been covered by the Lumbermens' policy. In the circumstances, however, we conclude that Pisoni, Pillsbury, and Woolworth were not covered because they, in effect, had accepted responsibility for the goods and no longer could be said to have been using the truck, after Woolworth's employees had placed the merchandise on the sidewalk. The trial judge's conclusion that unloading had not ceased was not justified by his subsidiary findings or by the evidence.

2. There is no occasion for discussing other issues.

3. The final decree is reversed. A new final decree is to be entered declaring that Lumbermens is not liable for Miss Ervin's injuries. Lumbermens is to have costs of appeal.

*So ordered.*