PLYMOUTH ROCK ASSURANCE CORPORATION *vs.* CHERYL
MCALPINE & another.[1]

No. 90-P-1383.

Suffolk. January 22, 1992. - July 2, 1992.

Present: PERRETTA, KASS, & IRELAND, JJ.

*Insurance*, Motor vehicle insurance, Uninsured motorist, Construction of
policy. *Words*, "Similar coverage."

A person who was injured by an uninsured motorist and had been paid the
full limit of her own uninsured motorist coverage, could not make a
claim against, i.e., stack, the uninsured motorist coverage provisions of
another policy of a household member, where the terms of the policy
precluded such stacking in accordance with St. 1988, c. 273, § 47.
[756-759]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 27, 1990.

The case was reported by *Hiller B. Zobel*, J.

*John D. Boyle* for the plaintiff.

*Samuel E. Greydanus, III*, for the defendants.

PERRETTA, J. On July 3, 1989, Cheryl McAlpine was in
an automobile accident which was caused by the negligence
of an uninsured motorist. She was the sole named insured on
a policy, issued to her by Commercial Union Insurance Com-
pany (Commercial), effective December 11, 1988, through
December 11, 1989. Commercial paid her the full limit,
$10,000, of her uninsured motorist coverage. At the time of
the accident, McAlpine resided with her mother, Beatrice
Cate, who had uninsured motorist coverage in the amount of
$50,000 on a policy issued to her on January 1, 1989, by
Plymouth Rock Assurance Corporation (Plymouth). When
McAlpine sought to stack her policy coverage with that pro-

[1]Beatrice Cate.

vided under her mother's policy, Plymouth brought an action seeking a declaration that, under G. L. c. 175, § 113L, the coverage provided under its policy with Cate could not be stacked with the uninsured coverage available to McAlpine under her policy with Commercial. The parties entered into a statement of agreed facts, and a Superior Court judge, pursuant to Mass.R.Civ.P. 64, 365 Mass. 831 (1974), reported to us the question whether Cate's 1989 policy provides uninsured motorist coverage to McAlpine. Concluding that it does not, we respond "No" to the question.

1. *The statute.* In *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 456 (1985), the court stated that the "propriety of stacking is a policy decision best left to the Legislature, and . . . the strict command of the statute [G. L. c. 175, § 113L] precludes the insurer's attempt to avoid stacking uninsured motorist coverage."

In 1988, the Legislature amended various motor vehicle insurance statutes and expressed a very different policy decision. The purpose of the amendments, as expressed in St. 1988, c. 273, § 1, is to reduce automobile insurance rates.

Statutes 1988, c. 273, § 47, amends § 113L by adding thereto a fifth paragraph. That paragraph provides, as here pertinent: "Uninsured motorists coverage shall provide that regardless of the number of vehicles involved, whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more vehicles or two or more policies be added together combined or stacked to determine the limits of insurance coverage available to injured persons."

By c. 273, § 77 of St. 1988, § 47, was made "effective for policies or contracts issued or renewed on or after the first of January, nineteen hundred and eighty-nine."

2. *The policy's exclusion of coverage.* As earlier noted, Plymouth issued its policy to Cate on January 1, 1989. There are two clauses in the mandatory endorsement to the underlying policy that are pertinent to McAlpine's bid to

combine the coverage under the two policies, and they are consistent with the legislative prohibition against stacking. The first appears in subparagraph 1 to Part 3, "Bodily Injury Caused By An Uninsured Auto," and reads: "We will pay damages to or for: 1. You [Cate], or any household member [McAlpine], unless the household member has a Massachusetts auto policy of his or her own providing similar coverage or is covered by a Massachusetts auto policy of another household member providing similar coverage with higher limits."

Plymouth contends that "similar coverage" means, simply, coverage for bodily injury caused by an uninsured motorist. Because McAlpine's policy provides her with such protection, Plymouth concludes that she is excluded from coverage under its policy. McAlpine argues that the term "similar coverage" means "similar limits of coverage." Because her own policy provides her with less uninsured coverage than the Plymouth policy, she claims that the exclusion does not apply.

In construing the word "similar" as used in the policy, we do not find the common meaning and understanding of that word to be of any particular help. "The word 'similar' is often used to denote a partial resemblance only. But it is also often used to denote sameness in all essential particulars." *Commonwealth* v. *Fontain*, 127 Mass. 452, 454 (1879). It would thus appear that both Plymouth and McAlpine can find support for their conflicting contentions in the common meaning and understanding of the word "similar." However, as stated in *Amica Mut. Ins. Co.* v. *Bagley*, 28 Mass. App. Ct. 85, 90 (1989), "[a]lthough reading the words of an insurance policy, as any contract, in accordance with their ordinary meaning is a sound starting point for construction, that approach is less sound when, as here, the content of a policy is substantially dictated by statute, and the form of the policy is reduced to a standard one. We are to read the policy so that it is consistent with what the statute prescribes." (Citations omitted.)

McAlpine's understanding of the phrase "similar coverage" leads to a result that contradicts the clear prohibition set out in the statute, whereas Plymouth's reading of those words, which excludes McAlpine from coverage under its policy, is consistent with the statute. Subparagraph 1 to Part 3 of Plymouth's policy precludes stacking only if "similar coverage" is construed to mean that a household member who has his or her own policy providing protection against uninsured motorists, irrespective of the limits of coverage, must proceed under that policy. On the other hand, if the household member has no policy of his or her own but is covered under the policy of more than one household member, the policy with the higher limit is to be the covering policy. There is no stacking of or election between policies when the injured party has coverage. In that instance, the injured party looks to his or her own policy.

This construction of the exclusion, set out in subparagraph 1 to Part 3 of the mandatory endorsement revising the underlying policy to conform to the 1988 amendments to § 113L, is in harmony with a later paragraph also found in Part 3 of the mandatory endorsement: "The Limits of two or more autos or policies shall not be added together, combined, or stacked, to determine the limits of coverage available to anyone covered under this Part, regardless of the number of autos involved, persons covered, claims made, or premiums shown on the Coverage Selections Page." This language essentially tracks that of the legislative mandate set out in St. 1988, c. 273, § 47.

Our conclusion that McAlpine cannot stack the coverage provided to her by Commercial's policy with that provided by Plymouth to Cate and members of her household is required by the language of the latter policy which was written to comply with the strict command of St. 1988, c. 273, § 47.

3. *Application of the statute to McAlpine.* It is McAlpine's position that the amendment to § 113L, effective January 1, 1989, and applicable to policies issued or renewed on or after that date, cannot be applied retroactively to her 1988 policy which does not prohibit stacking. This argument is

based upon the erroneous premise that the antistacking amendment to § 113L is being applied to her policy.

"Stacking is where a claimant adds all available policies together to create a greater pool in order to satisfy his actual damages." *Cardin* v. *Royal Ins. Co.*, 394 Mass. at 456 n.7, quoting from 12A Rhodes, Couch's Insurance Law §45:651, at 207 (2d ed. rev. 1981). The key word in the definition of stacking is "available." There is nothing in the antistacking amendment to §113L which prohibits McAlpine from combining the coverage provided by her 1988 policy with any other policy which, like her own, had issued prior to January 1, 1989, and which, therefore, would be available for purposes of stacking. The fact that Plymouth's policy is unavailable to her is not the result of a retroactive application of the statute to her policy with Commercial.

4. *Conclusion.* We answer the question reported by the Superior Court, "No." The matter is remanded to the Superior Court for further proceedings in accordance with our answer.

*So ordered.*