TRAVELERS INSURANCE CO. *vs.* KAREN JOSEPH.

No. 91-P-93.

Bristol. February 20, 1992. - August 11, 1992.

Present: ARMSTRONG, PERRETTA, & GREENBERG, JJ.

*Insurance*, Motor vehicle insurance, Underinsured motorist.

A motorist who was living in her parents' household at the time of her injury in an automobile accident on January 6, 1989, and who had been paid the policy limit on the tortfeasor's liability policy as well as the policy limit on the underinsured motorist coverage of her own policy, was precluded, under St. 1988, c. 273, § 47, from recovering on the underinsured motorist coverage of two policies on her parents' automobiles which were in effect on a calendar year basis, inasmuch as the "anti-stacking" provisions of § 47 applied to all policies issued or renewed on or after January 1, 1989, and were not subject to the notice provisions of St. 1988, c. 273, § 70. [169-170]

CIVIL ACTION commenced in the Superior Court Department on September 7, 1989.

The case was heard by *John M. Xifaras*, J., on a motion for summary judgment.

*David H. Waxler* for the defendant.

*Thomas M. Dickinson* for the plaintiff.

ARMSTRONG, J. Karen Joseph, a twenty year old living with her parents, was seriously injured in an automobile accident on January 6, 1989. She has been paid the policy limit, $10,000, from the liability insurer of the tortfeasor, and an additional $10,000, also the policy limit, on the underinsured motorist coverage of her own automobile insurance policy, which was in effect from July 26, 1988, to July 26, 1989. She seeks to collect on the underinsured motorist coverage of the two policies for her parents' two automobiles. Their policies are in effect on a calendar-year basis. This set of facts parallels in all material particulars that in *Plymouth Rock Assur.*

*Corp.* v. *McAlpine*, 32 Mass. App. Ct. 755 (1992), although the claimant's principal contention in this case is different.

Under the law in effect in 1988, Karen Joseph would have been able to combine, or "stack," the underinsured coverages of the three household policies. *Wincek* v. *United States Fid. & Guar. Co.*, 28 Mass. App. Ct. 901 (1989). See also *LeCuyer* v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 709, 711 (1988) (recognizing stacking of separate household policies but declining to permit stacking where three household vehicles are insured under a single policy). This result was predicated on the then compulsory nature of underinsured motorist coverage.

By St. 1988, c. 273, the Legislature comprehensively amended the automobile insurance law. Two relevant changes were made to underinsured motorist coverage. By § 47, stacking was eliminated as to policies issued or renewed on or after January 1, 1989.[1] Section 46 made underinsured motorist coverage an optional extra, rather than a compulsory component of policies issued in Massachusetts.[2] A transitional provision, § 70, provided that, with respect to policies issued or renewed in 1989, insurers should provide purchasers with "a notice of the changes in the law governing underinsured and uninsured motorist coverages pursuant to section forty-six hereof," including the fact that they would not have underinsured coverage unless they should elect to purchase it. Until two weeks after the mailing of the notice, § 70 goes on, "[f]or holders . . . of policies issued or renewed in [1988] who renew those policies in [1989], notwithstanding the provisions of [§ 46] hereof, uninsured coverage under the [1989] policy will continue to include underinsured coverage in the

---

[1]Section 47 amended G. L. c. 175, § 113L, to include this language: "Uninsured motorists coverage shall provide that regardless of the number of vehicles involved, whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more vehicles or two or more policies be added together[,] combined[,] or stacked to determine the limit of insurance coverage available to injured persons."

[2]Section 46 amended G. L. c. 175, § 113L(1) & (2). Uninsured motorist coverage remained compulsory.

same policy limit as the policy holder . . . had at the end of the [1988] policy . . . ." Karen Joseph argues that, because her parents had renewed their 1988 policies in 1989, and because they had not at the time of the accident on January 6, 1989, received the notice required by § 70, their underinsured motorist coverage continued to be in place as it was under the 1988 policies, unaffected by the provisions of c. 273, and thus available for stacking.

The judge correctly rejected the argument. The notification requirement of § 70 applies, not to all changes in uninsured and underinsured motorist coverages effected by St. 1988, c. 273, but only to those changes in the coverages "pursuant to [§46] hereof." The anti-stacking provision is § 47; § 46 converts underinsured motorist coverage from compulsory to optional. The apparent purpose of the notification provision was to keep underinsured motorist coverage in place until the policy holder should be made aware that he could keep it in place only by purchasing it as an optional coverage. Section 70 does not mandate that policyholders be notified of the prohibition on stacking effected by § 47. That prohibition applied to all policies issued or renewed on or after January 1, 1989, regardless of notice.

Karen Joseph's other contention, that her policy, as one issued in 1988, could not be counted for stacking purposes, and that she can collect on the underinsured motorist provision of one of her parents' two policies, is disposed of by our decision in *Plymouth Rock Assur. Co.* v. *McAlpine, supra* at 758-759.

*Judgment affirmed.*