Quinlan, Regina L., J.
This action arises from a fire on or about July 22, 2003 which destroyed á residence at 69 Greensward Road, Mashpee, MA (the property). The plaintiff Barnstable County Mutual Insurance Company had issued a homeowner’s insurance policy No. HO 349729 (the policy) which was in effect on the date of the fire. The defendant Linda Vote Dezotell is the record owner of the property. The defendant Michael Dezotell is her husband.
On June 30, 2005, the plaintiff filed this action to recover the $297,000 which had been paid to the defendant Linda Vote Dezotell in satisfaction of the claim made as a result of the fire under the policy. On June 30, 2005, the court (Connon, J.) granted the plaintiffs ex parte Motion for Real Estate Attachment. On June 19, 2006, the defendant Linda Voto Dezotell (the defendant) filed a Motion to Dissolve the Real Estate Attachment. In seeking to dissolve the attachment, the defendant essentially asserts two grounds, one procedural and one substantive. The motion is opposed by the plaintiff.
Mass.R.Civ.P. 4.1(f) provides:
An order approving attachment of property for a specific amount may be entered ex parte upon findings by the court that there is a reasonable likelihood that the plaintiff will recover judgment in an amount equal to or greater than the amount of the attachment over and above any liability insurance known or reasonably believed to be available, and that either . . . (ii) there is a clear danger that the defendant if notified in advance of attachment of the property will convey it, remove it from the state or will conceal it, or (iii) there is immediate danger that the defendant will damage or destroy the property to be attached. The motion for such ex parte order shall be accompanied by a certificate by the plaintiff or his attorney of the amount of any liability insurance which he knows or has reason to believe will be available to satisfy any judgment against the defendant in the action. The motion, in the filing of which the plaintiffs attorney shall be subject to the obligations of Rule 11, shall be supported by affidavit or affidavits meeting the requirements set forth in subdivision (h) of this rule.
Rule 4.1(h) provides:
Affidavits required by this rule shall set forth specific facts sufficient to warrant the required findings and shall be upon the affiant’s own knowledge, information or belief, and, so far as upon information and belief, shall state that he believes this information to be true.
The plaintiffs Motion for Real Estate Attachment is supported by the affidavit of James T. Buchanan, counsel for the plaintiff. The defendant complains that it is not based upon personal knowledge and the jurat is defective. An affidavit pursuant to Rule 4.1(h) need not be based solely upon personal knowledge; it may be based upon information and belief. The Buchanan affidavit is not defective since it is based upon information provided by third parties and not based solely upon personal knowledge. However, the form of the affidavit is defective in that it fails to include a statement that the affidavit is made under oath and that, to the extent it is based upon information and belief, the affiant believes the information to be true as required by §4.1(h). The technical defect is not fatal to the order approving the attachment; nor is it grounds to vacate the attachment.
The more substantive challenge to the attachment is that the plaintiff does not have a reasonable likelihood of recovering judgment against the defendant Linda Voto Dezotell, the named insured under the policy. To address this issue for the puiposes of this motion, the court relies upon the information in the *270 Buchanan affidavit (as effectively amended by the parties), as well as other documents in the record.[1] Although the Motion to Dissolve Attachment includes an objection to the form and substances of the affidavit it does not include a motion to strike the Buchanan affidavit. See Fowles v. Lingos, 30 Mass.App.Ct. 435, 439 (1991) (without motion to strike, relying on defective affidavits is left to court’s discretion).
In Buchanan affidavit, the affiant states that the plaintiff is seeking to recover funds paid on a fraudulent claim made by “the Dezotells” as a result of a fire at the insured premises and that the plaintiff indemnified “the Dezotells” the sum of $297,000.00 pursuant to homeowner’s policy No. H0349729.[2] According to the affiant, after payment was made, the plaintiff learned that a Michael Fornal had been arrested in connection with the fire at 69 Greensward Road, Mashpee and that, according to Trp. Michael Peters of the Massachusetts State Marshall’s Office, Fornal made a statement admitting that he had set the fire at the request of “the Dezotells” in exchange for $10,000.00. The affiant also stated that the defendant Linda Voto Dezotell had been examined under oath by the plaintiff after the claim had been filed. She stated during that examination that she has been unemployed and her sole means of support is her husband, the defendant Michael Dezotell. With respect to the defendant Michael Dezotell, the affiant further reported that he had been engaged in illegal bookmaking and racketeering “for virtually his entire life” and that he had been convicted in the United States District Court for the District of Massachusetts on charges of bookmaking and racketeering and given a committed sentence. The affiant also reported that the remains of the residence destroyed by the fire had been demolished, that a new residence which was substantially larger and more expensive had been built and the property had been listed for sale with the Multiple Listing Service for $1,750,000.00.
At the outset the court notes that the first Buchanan affidavit suffers from hyperbole. The affiant overstates the case against the defendant Linda Voto Dezotell by constantly referring to “the Dezotells” collectively. The affiant neglects to include the fact that the defendant Linda Voto Dezotell is the only named insured under the policy and, more egregiously, neglects to disclose that he was not told that Michael Fornal has said he set the fire “at the behest of the Dezotells.” The affiant was told that Fornal had only referred to the defendant Michael Dezotell as having paid him to set the fire. The affiant was not told that the defendant Linda Voto Dezotell was involved in any such transaction or scheme.[3]
The defendant Linda Voto Dezotell argues that, as a matter of law, she cannot be barred from recovery under the policy even if it is assumed that the defendant Michael Dezotell was involved in causing the loss because she was the sole named insured and the sole owner of the properly. She further argues that, to the extent the policy precludes recovery for an intentional loss, that exclusion is void as to her since it violates the terms of G.L.c. 175, §99.
The policy defines the term “insured” to include the named insured, and the spouse if a resident of the same household and certain residents of the household of the named insured and his/her spouse. By this policy definition, the term “insured” includes both the defendant Linda Voto Dezotell her husband, the defendant Michael Dezotell.[4] The policy further provides in the section listing exclusions that the plaintiff does not insure against any Intentional Loss. An intentional loss is defined as follows in paragraph 8:
Intentional Loss means any loss arising out of any act an “insured” commits or conspires to commit with the intent to cause a loss.
In the event of such a loss, no “insured” is entitled to coverage, even “insureds” who did not commit or conspire to commit the act causing the loss.
“The interpretation of an insurance policy is a question of law. Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). When interpreting insurance policies, courts are guided by several principles. Like all contracts, an insurance policy is to be construed according to the fair and reasonable meaning of its words. Id. Exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured. See Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431-32 (1965). Doubts created by any ambiguous words or provisions are to be resolved against the insurer. August A. Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243 (1959).” City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, [ ] (2006).
In the intentional loss exclusion, the plaintiffs policy refers to “cm ‘insured’ ” or “insureds.” Clearly, under the policy terms, the plaintiff did not intend to limit the exclusion to the named insured but rather sought to have the exclusion apply to all insureds, named or unnamed, who came within the policy definition. Therefore, under the policy definition, the defendant Michael Dezotell is “an insured” for the purposes of the Intentional Loss exclusion. According to the terms of the policy, the defendant Linda Voto Dezotell would be precluded from recovering under the policy if the defendant Michael Dezotell participated in a scheme or conspiracy to burn the insured premises.
That does not end the inquiry, however. General Laws c. 175, §99, mandates the form of fire insurance policies in Massachusetts. Ideal Financial Services, Inc. v. Zichelle, 52 Mass.App.Ct. 50, 66 (2001). “[A]s stated in Arnica Mut. Ins. Co. v. Bagley, 28 Mass.App.Ct. 85, 90 (1989), ‘[although reading the words of an insurance policy, as any contract, in accordance with their ordinary meaning is a sound starting point for construction, that approach is less *271 sound when, as here, the content of a policy is substantially dictated by statute, and the form of the policy is reduced to a standard one. We are to read the policy so that it is consistent with what the statute prescribes.’ ” Plymouth. Rock Assur. Corp. v. McAlpine, 32 Mass.App.Ct. 755, 757 (1992).
“Because the language of the standard policy is prescribed by statute and controlled by the Division of Insurance rather than the individual insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable. MacBey v. Hartford Accident & Indem. Co., 292 Mass. 105, 108 (1935) . . . Instead, we must ascertain ‘the fair meaning of the language used, as applied to the subject matter.’ Save-Mor Supermarkets, Inc. v. Skelly Detective Serv., Inc., 359 Mass. 221, 226 (1971), quoting Oakes v. Manufacturers’ Fire & Marine Ins. Co., 131 Mass. 164, 165 (1881).” Bilodeau v. Lumbermens Mat. Cas. Co., 392 Mass. 537, 541 (Mass. 1984).
G.L.c. 175, §99 provides in pertinent part:
Section 99. No company shall issue policies or contracts which, under the authority of clause First of section forty-seven, insure against loss or damage by fire or by fire and lightning to property or interests in the commonwealth, other than those of the standard forms herein set forth, except as provided in section twenty-two A and in section one hundred and two A, and except as follows:
This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.
Unlike the policy, which uses the phrase “an insured,” the statute uses the phrase “the insured.”
It is in this context that the defendant Linda Voto Dezotell raised the issue of the likelihood of the plaintiff recovering judgment against her. Assuming that the state of the evidence against the defendant Linda Voto Dezotell remains constant and there is no evidence of her having been complicit in an Intentional Loss, does the distinction between “an insured” and “the insured” diminish the coverage mandated by §99?
There are few Massachusetts cases concerning the ability of an innocent spouse to recover where the other spouse caused the loss. In Kosior v. Continental Insurance Co., 299 Mass. 603 (1938), the Court barred recovery by an innocent spouse whose husband had intentionally set the fire which caused the loss. The property was owned jointly. The innocent spouse and her husband, were named in the policy as joint insureds. In denying recovery, the Court noted that there were cases in other jurisdictions where an innocent spouse who was the sole owner of property was permitted to recover even though the property was destroyed by the other spouse. Id. at 604. The significant factors considered were that the spouse was innocent of wrongdoing and the property was owned individually rather than jointly. In Baker v. Commercial Union Insurance Company, 382 Mass. 347 (1981), the Court held that the innocent spouse could recover even though his wife had set the fire which caused the loss because the wife’s mental illness precluded her from forming the requisite intent. In Baker, the husband and wife owned the property jointly and both were named insureds under the policy.[5]
Resolution of the issue requires the court to decide whether the phrase “the insured” as used in §99 includes “an ‘insured’ ” or “no ‘insured’ ” as used in the Intentional Loss exclusion in the policy. It has been noted in Yerardi v. Pacific Indemnity Company, 200 U.S. Dist. MA 43284 (2006), that Massachusetts has not addressed whether the statutory language in G.L.c. 175, §99 “provides coverage for innocent co-insureds, and in light of the Supreme Judicial Court’s ruling in Kosior, it is not clear that the Massachusetts courts would so interpret the statute.” Id. at p. 28. Although the issue was raised in Yerardi, it was not resolved.
It has been resolved in New York and Arizona. In Lane Security Mutual Insurance Company, 724 N.Y.S.2d 670 (2001), the Court of Appeals for New York considered a policy providing coverage for fire loss which excluded coverage for losses caused by intentional acts by “an insured” which was defined as “you and, if residents of your household, your relatives.” The plaintiff was the named insured. The fire causing the loss was set by her 17-year-old son who resided in her household. The company had disclaimed because the son was “an insured.” The New York Court held that the exclusion in the policy impermissibly restricted coverage mandated by the New York statute setting forth mandatory policy terms. N.Y. Insurance Law §3404(e). The standard form exclusion set forth in the statute provided that “damages will be disclaimed ‘for loss occurring . . . while the hazard is increased by any means within the control or knowledge of the insured.’ ” [Emphasis in the original.) The Court stated at p. 672:
[T]he “an insured” language contained in the defendant’s policy “offers any innocent party significantly less coverage than the language ‘the insured.’ Since the latter phrase is that adopted by the Legislature in the Insurance Law, use of the former violates that statute’s requirement that all fire policies offer the level of coverage provided in the standard policy.” . . . [Citation omitted.)
The Court concluded that, under the circumstances of that case, the exclusion did not apply to the named insured. See also Nangle v. Farmers Insurance Company, 205 Ariz. 517 (2003) In that case, Farmer’s policy excluded coverage for intentional acts of “any *272 insured.” Arizona’s standard form policy confined the exclusion for intentional acts to “the insured.” The Court noted the decision by the New York Court of Appeals in Lane, supra. The Arizona Court, noting that “[tjhe words ‘any insured’ are broader than ‘the insured,’ ” held that, by using the term “the insured” in the standard policy mandated by statute rather than the terms “any insured” or “an insured” evidenced a legislative intent to allow recoveiy by the innocent named insured.
Whether the defendant Linda Voto Dezotell is an innocent named insured is a question of fact. However, the interpretation of the policy language and whether it conforms to the requirements of §99 is a question of law. The Intentional Act exclusion in the policy issued by the plaintiff may veiy well be construed as diminishing or diluting the coverage required under §99. The Intentional Act exclusion terms may veiy well be construed to exceed the scope of exclusion permitted under the term “the insured” in the statute.
The plaintiff has offered no information from which the court can conclude the defendant Linda Voto Dezotell engaged in any intentional conduct which caused the loss. Therefore, the plaintiff has failed to demonstrate that there is a reasonable likelihood of its recovering judgment against the defendant Linda Voto Dezotell.

ORDER

Based upon the foregoing, the Defendant Linda Voto Dezotell’s Motion to Dissolve Attachment is ALLOWED. The attachment of the property of Linda Voto Dezotell is hereby ORDERED VACATED.

Including the Buchanan Affidavit of June 6, 2006 in support of the plaintiffs opposition to defendant’s Motion to Compel and copies of the insurance policy in issue.

A copy of the policy was provided in a subsequent pleading. The only named insured on the face of the policy is the defendant Linda Voto Dezotell.

The plaintiff subsequently (and unsuccessfully) moved to amend the complaint in this action to include Michael Fornal as a defendant. In Count IX of the proposed amended complaint, the plaintiff alleges that Fomal conspired with Michael Dezotell only. The defendant Linda Voto Dezotell objected to the amendment on the grounds of prejudice.

For the purpose of this motion only, the court assumes without deciding that the defendant Michael Dezotell was a resident of the same household as of the date of the fire.

In Courtney v. Commerce Insurance, Worcester Superior Court Civil Action, 92-2704, the property was owned by former spouses as tenants in common and both spouses were named insureds.