AMICA MUTUAL INSURANCE COMPANY *vs.* DOUGLAS
BAGLEY & another.[1]

No. 88-P-1075.

Norfolk. October 13, 1989. - November 22, 1989.

Present: KASS, SMITH, & WARNER, JJ.

*Insurance*, Motor vehicle insurance, Underinsured motorist, Construction
of policy.

Personal injury protection (PIP) benefits paid to an injured party under an
out-of-State automobile insurance policy were to be applied to reduce
the benefits payable under the underinsured motorist provisions of a
standard Massachusetts policy. [88-91]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 16, 1988.

The case was heard by *John M. Xifaras*, J., on a motion
for summary judgment.

*Edward A. Gottlieb* for the defendants.
*Charles F. Corcoran, Jr.*, for the plaintiff.

KASS, J. Two sets of collisions spawned this appeal: the
first between a moving car and a parked car; the second, at a
four-way intersection of (a) the Massachusetts "no-fault"
statute (St. 1970, c. 670), (b) the Massachusetts uninsured
motorist statute, (c) the personal injury protection (PIP) pro-
vision of a New York automobile insurance policy, and (d)
the underinsured motorist coverage of a Massachusetts pol-
icy.[2] Less metaphorically, the case presents the question
whether PIP benefits paid under an out-of-State insurance

---

[1]Gerald P. Bagley, Douglas Bagley's father.
[2]"Navigating the tortuous twists of automobile insurance law poses a
challenge at least equal to that faced by the uninitiated driver on his first
foray into the streets of Boston." *Cardin* v. *Royal Ins. Co. of America*, 394
Mass. 450, 452 (1985) (Lynch, J.).

policy reduce benefits payable under the underinsured motorist provisions of a Massachusetts policy.

The facts are not in dispute. On June 24, 1983, Douglas Bagley was seriously injured when the automobile in which he was a passenger collided with a parked car in Roslindale, Massachusetts. John Bell of Rochester, New York, owned and operated the moving vehicle at the time of the accident. Bell's car was registered in New York and was insured by the Travelers Indemnity Company (Travelers) under a New York State motor vehicle policy. The New York policy provided $35,000 in liability insurance covering bodily injury and property damage and $50,000 in "Additional Personal Injury Protection" (PIP) benefits.

At the time of the accident, Douglas Bagley was a member of his father's household. The elder Bagley was insured under a Massachusetts motor vehicle policy issued by Amica Mutual Insurance Company which, as required by Massachusetts law, provided $2,000 in PIP benefits and $50,000[3] in uninsured or underinsured motorist (UM) coverage, the latter extending to the insured's household members. The Amica policy further provided for arbitration to resolve disputes as to the amount of UM benefits due.

In addition to commencing a negligence action against Bell in Superior Court, Douglas submitted a claim for PIP benefits under Bell's New York Travelers policy. Douglas received $50,000 in New York PIP benefits and, with Amica's consent, settled the tort claim for $34,000, that being the balance of Bell's liability coverage.[4]

Douglas then turned to the underinsured motorist coverage of his father's Amica policy for additional recovery. The parties agreed Amica is entitled, through subrogation, to offset any award of UM benefits by the $34,000 paid to Douglas in

[3]The amount of UM coverage is in excess of the $10,000/$20,000 required. See G. L. c. 90, § 34A, as amended through St. 1979, c. 611, § 2, and G. L. c. 175, § 113L.

[4]Travelers had paid $1,000 to the owner of the parked car that Bell hit.

settlement of the tort claim.[5] They locked horns, however, over the calculation of the UM benefits available to Douglas.

Pursuant to the Amica policy, they submitted their dispute to arbitration. Douglas and his father contend that the arbitrator should determine the total amount of compensable damages and then deduct $34,000 to arrive at the UM award. In other words, it is their position that the UM benefits may duplicate the New York PIP benefits Douglas already received. Amica, on the other hand, maintains that the UM benefit award should be the amount by which Douglas' total compensable damages exceed the entire $84,000 he recovered under the New York Travelers policy. Amica concedes that the $50,000 in UM coverage could be applied to the total compensable damages to the extent that the arbitrator finds they exceed $84,000. By way of example, if the arbitrator were to find that Douglas' total compensable damages come to $90,000, Amica agrees that it would be obliged to pay $6,000 from the UM coverage it furnished. The Bagleys claim entitlement to the entire $50,000 UM coverage and, thus, an aggregate recovery of $134,000. Amica prevailed on its summary judgment motion and the Bagleys appealed.

The Bagleys erect their theory for disregarding the $50,000 in PIP benefits on two semantic props. The first, based on statute, is that insurance proceeds paid under PIP coverage do not constitute payments under a *liability policy* and that only money paid on account of *liability* may be set off against Massachusetts UM coverage. The second, based on contract, is that the text of the Amica policy (which is in the standard Massachusetts text) provides for setting off amounts paid under another *Massachusetts* auto policy but as the $50,000 in PIP were paid under a *New York* policy, they do not count. Neither prop holds weight.

---

[5]That right of subrogation rests on G. L. c. 175, § 113L(4), which states that the UM provider is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery the injured person has against the person legally responsible for the damage.

1. *Statutory ground.* In support of their first or statutory argument, the Bagleys look to G. L. c. 175, § 113L(1) and (4), as amended through St. 1980, c. 532, §§ 1 & 2, which require Massachusetts motor vehicle policies to include uninsured and underinsured motorist coverage. Subparagraph (1) speaks to providing compensation due an injured party in the absence or inadequacy of the insurance carried by the person legally responsible.[6] Subparagraph (4) authorizes an insurer who is obligated to pay under UM coverage to take into account any settlement with, or judgment against, the person legally responsible for the injury for which UM payments were, or are to be, made.[7]

Reference to amounts paid by the legally responsible person, the Bagleys argue, encompasses bodily injury liability coverage but not PIP, which is no-fault insurance. It is an artificial separation. The statute which requires carrying no-fault insurance comprehends PIP as part of a motorist's liability policy: "every motor vehicle liability policy . . . executed in this commonwealth shall provide personal injury protection benefits." G. L. c. 90, § 34M, inserted by St. 1970, c. 670, § 4. See *Pinnick* v. *Cleary*, 360 Mass. 1, 8 (1971). The extent to which older norms of tort liability are not brought into play is "matched to the availability of [PIP] benefits to the plaintiff." *Ibid. Vieira* v. *Schupp*, 383 Mass. 739, 741-742 (1981). Similarly, in Bell's New York policy,

---

[6]Subparagraph (1) of G. L. c. 175, § 113L, in pertinent part provides: "(1) No policy shall be issued . . . in the commonwealth with respect to a motor vehicle, . . . registered in this state unless such policy provides coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, . . . whose policies . . . are insufficient in limits of liability to satisfy said damages, to the extent that said damages exceed said limits of liability subject to the terms of the policy."

[7]Subparagraph (4) of G. L. c. 175, § 113L, in pertinent part provides: "(4) In the event of payment to any person under the coverage required by this section . . . the insurer making such payment shall, . . . be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person . . . legally responsible for the bodily injury for which such payment is made. . . ."

the PIP coverage was set forth as an endorsement to the underlying liability policy.[8]

Perhaps even more to the point, the PIP scheme and UM coverage both have as an objective the avoidance of duplicate recovery. See *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 347 (1978); *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 177 (1981); *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450, 454 (1985); 12A Couch on Insurance § 45:652 (2d ed. 1981). The goal of UM coverage is to protect the public against drivers who lack the insurance or the resources to pay compensation for injuries which those drivers have inflicted. *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. at 454. General Laws c. 175, § 113L, presupposes that UM coverage bridges the gap (to the dollar limits of the UM coverage) between what is collected from the person legally responsible and the compensation due. See *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 369-372 (1988); *MacInnis* v. *Aetna Life & Cas. Co.*, 403 Mass. 220, 225 (1988). Compare *Wincek* v. *United States Fid. & Guar. Co., post* 901 (1989), which involved claims by an insured person against his own insurance policies.

We conclude that the statutory framework favors including Bell's New York PIP coverage in the amount to be subtracted from compensable damages for purposes of calculating whether there is to be a call on the Bagleys' UM coverage. Compare *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 96 n.10 (1983).

2. *Contractual ground.* Without apparent sense of irony the Bagleys seize on language in the standard Massachusetts policy which fends off duplicate recovery to support their entitlement to a double dip into the aggregate policy proceeds. The penultimate paragraph of part 3 of the standard policy, captioned "Bodily Injury Caused by an Uninsured or Underinsured Auto," provides:

---

[8]Section II of the New York PIP endorsement defined as an eligible injured person "any other person who sustains personal injury arising out of the use or operation of the insured motor vehicle while occupying the insured motor vehicle."

"We will not pay under this Part for any expenses that
are payable . . . under the PIP coverage of this policy
or any other *Massachusetts* auto policy" (emphasis
supplied).

If this language is read literally, PIP coverage proceeds paid
under a policy issued in a State other than Massachusetts
may not be applied in reduction of UM benefits. The $50,000
in PIP benefits which Douglas Bagley received, it will be re-
called, flowed from a New York policy. Although reading the
words of an insurance policy, as any contract, in accordance
with their ordinary meaning is a sound starting point for con-
struction, *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. at
453, that approach is less sound when, as here, the content of
a policy is substantially dictated by statute, and the form of
the policy is reduced to a standard one. *Ibid.* See *Commerce
Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 387 (1988). We are
to read the policy so that it is consistent with what the stat-
ute prescribes. See *Surrey* v. *Lumbermens Mut. Cas. Co.*,
384 Mass. at 172-173. Cf. *Bilodeau* v. *Lumbermens Mut.
Cas. Co.*, 392 Mass. 537, 541 (1984).

The statutory scheme, as we have seen, attempts to avoid
duplicate recoveries of insurance benefits for the same ele-
ments of loss. The $50,000 in PIP benefits paid from the
New York policy were directed to compensating the injured
party for so much of his injuries (expressed in dollars) as the
$34,000 in basic liability insurance did not cover. The Mas-
sachusetts UM benefits have the same purpose and may be
applied only to the extent Douglas Bagley's compensable in-
juries exceed the aggregate $84,000 in proceeds received
from the New York policy. As in *Mailhot* v. *Travelers Ins.
Co.*, 375 Mass. at 345, our task is to take language which, in
application, exposes a gap or previously unconsidered ques-
tion, and temper it with interpretations which compose, "as
far as feasible and reasonable, an harmonious structure
faithful to the basic designs and purposes of the Legislature."
*Ibid.*

Our conclusion that, correctly read, the Massachusetts pol-
icy requires all proceeds from the New York policy to be

applied against the underinsured coverage is buttressed by the last sentence of the first paragraph of part 3 of the standard Massachusetts policy:

> "We consider an auto to be underinsured if the insurance . . . covering the auto or operator is not sufficient to pay for the damage sustained by the injured person."

The quoted language does not differentiate between liability insurance and insurance which becomes payable without regard to establishing fault.

The judgment declaring (in substance) that underinsurance coverage shall be payable to Douglas Bagley only to the extent compensation for his injuries exceeds $84,000 is affirmed.

*So ordered.*