Botsford, J.
The five motions and cross-motions for summary judgment involve the underinsurance provisions provided in the insurance policies of the defendants Hanover Insurance Company (Hanover), State Farm Insurance Company (State Farm), Regal Insurance Company (Regal), and United Services Automobile Association (USAA). This case arises out of a fatal car accident caused by an underinsured driver, Anthony Matanza (Matanza); Stephen Andrew Hague was killed in that accident. The plaintiffs, John and Glenn Hague, the decedent’s parents, are the co-administrators of his estate. Matanza’s primary insurer, Safety Insurance Company (Safety), has been dismissed from the case. The plaintiffs now seek under-insurance coverage under the policies issued by the four remaining defendants.
To that end, the plaintiffs have moved for partial summary judgment on the issue of liability against Hanover, State Farm, Regal and USAA. Each of the four defendants opposes the motion and each has filed a cross-motion for summary judgment as well.[3]
The plaintiffs’ motion for partial summary judgment on the issue of liability is allowed in part and denied in part; Hanover’s cross motion for summary judgment is denied. The joint cross motion for summary judgment filed by State Farm and Regal is allowed• and USAA’s cross motion for summary judgment is allowed in part and denied in part.
Facts
The facts of this case are not in dispute.
On October 8,1993, Stephen Andrew Hague (Stephen Hague, or the decedent) was a passenger in a car driven by his girlfriend, Laura Kane. The car was owned by Laura’s mother, Nancy Kane, and Laura was driving it with her permission. Both Kanes were residents of Newton, Massachusetts. The accident occurred in Newton when Matanza struck the Kane vehicle.[4]
Matanza was insured under a $20,000 policy issued by Safety. On November 29, 1994, the plaintiffs filed suit against Matanza and Safety. On January 18,1995, upon receipt of $20,000 from Safety, the plaintiffs filed a Stipulation of Dismissal releasing Safety, but not Matanza, from liability. All the insurers named in this action as defendants were notified of the settlement and neither State Farm, Regal, nor USAA objected.
No party disputes that in the circumstances presented by Matanza’s available liability insurance, the plaintiffs are entitled to make a claim with respect to available underinsurance coverage. The Kane car was insured under a Massachusetts insurance policy issued by Hanover. The Hanover policy sets forth the following limits under its uninsured and underinsured coverage provisions: a $250,000 limit for bodily injury coverage for a person injured while an occupant of the car and $500,000 per accident. The Hanover policy also contains a provision for $5,000 medical payments coverage. The Hanover policy is a standard Massachusetts automobile insurance policy approved by the Massachusetts Commissioner of Insurance. The plaintiffs notified Hanover of their claim to underinsurance benefits on January 24, 1994.
Before the accident, Stephen Hague, aged 32, lived with his parents in Virginia. Stephen Hague was the named insured on two Virginia policies. State Farm issued to him a Virginia automobile insurance policy with a $100,000 uninsurance and underinsurance coverage limit per person and a $300,000 per accident limit; and Regal Insurance Company issued a Virginia automobile insurance policy on another vehicle, with a $25,000 uninsurance and underinsurance limit per person and a $50,000 limit per accident. The plaintiffs *450 notified State Farm and Regal of their claims to underinsurance benefits on January 24, 1994.
At the time of the accident, Stephen Hague’s father owned an insurance policy issued by the defendant USAA which covered Stephen as a “household member.” The USAA policy also was issued in the Commonwealth of Virginia, for a car registered in Virginia. On that policy, the limits for uninsured and underinsured coverage are $100,000 per person and $200,000 per accident. The USAA policy also provides a $10,000 death benefit to a beneficiary of an insured who dies as a direct result of bodily injury sustained in an auto accident if the beneficiary was wearing a seat belt. The plaintiffs notified USAA of their claim on March 15, 1994.
Discussion
The plaintiffs claim as follows:
(a) the Hanover policy must be made available to the plaintiffs under G.L.c. 175, §113L (1994 ed.)[5] because the decedent was not a named insured on a Massachusetts policy and not insured under any Massachusetts policy of a household member;
(b) Hanover is also liable for the payment of medical benefits to the plaintiffs;
(c) the three Virginia insurers, State Farm, Regal and USAA, are also liable for underinsurance coverage pursuant to Virginia law, see Virginia Code §38.2-2206(B);
(d) the defendants are not each entitled to a $20,000 set off;
(e) on the facts presented, USAA is liable for the payment of benefits under the seat belt provision of its policy as a matter of law.
Hanover opposes the plaintiffs’ motion and claims the following:
(a) as a matter of law. the plaintiffs may recover only from State Farm;
(b) Hanover is entitled to judgment as a matter of law on the plaintiffs’ claim of unfair or deceptive conduct and unfair claims settlement practices because there is insufficient evidence to indicate that Hanover violated G.L.c. 93A or c. 176D.
State Farm and Regal oppose the plaintiffs’ motion for summary judgment and jointly cross move for summary judgment claiming the following:
(a) as a matter of law, State Farm and Regal are not required to pay underinsured motorist benefits to the plaintiffs until the coverage afforded under the Hanover policy is exhausted;
(b) State Farm and Regal are entitled to judgment as a matter of law regarding the plaintiffs’ claims under G.L.c. 93A and c. 176D.
USAA opposes plaintiffs’ motion for partial summary judgment and cross-moves for summary judgment with the following claims:
(a) as a matter of law, the plaintiffs are not entitled to make a claim for underinsured motorist coverage benefits until they secure a judgment against the tortfeasor;
(b) as a matter of law, the plaintiffs’ claims under G.L.c. 93A and c. 176D must fail: and
(c) the plaintiffs are not entitled to summary judgment on their seat belt benefits coverage claim.
The plaintiffs oppose all of the defendants’ cross motions.
Where, as all parties agree is the case here, material facts are virtually not in dispute,[6] interpretation of written contracts and statutory provisions raise issues of law to be determined by the court. See Allstate Insurance Co. v. Bearce, 412 Mass. 442, 447 (1992). See also Attorney General v. Bailey, 386 Mass. 367, 371 (1982). This case primarily involves issues surrounding the interpretation of the four defendants’ insurance policies in conjunction with the Massachusetts statute governing uninsurance and underinsurance coverage, G.L.c. 175, §113L (§113L), and the corresponding Virginia statute governing the same matters, Virginia Code, §38.2-2206. At least with respect to the underinsurance claims involved, the only issue here is which of the moving parties is entitled to prevail on the facts as a matter of law.
I. Hanover
A. Underinsurance Liability
The plaintiffs, joined by defendants State Farm and Regal, argue that pursuant to the Hanover insurance contract and §113L, because Stephen Hague was not a named insured on a Massachusetts policy or a household member of a named insured on a Massachusetts policy, underinsurance coverage under the Hanover policy must be made available to the plaintiffs in the first instance.
Relevant Hanover policy provisions are as follows:
Part 12 Bodily Injury Caused By an Underinsured Auto
Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part, we will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance . . .
We will only pay if the injured person is legally entitled to recover from the owner or operator of the underinsured auto.
We will pay damages to or for:
1. You, . . .
2. Any household member, while occupying your auto, while occupying an auto not owned by you, or if injured as a pedestrian. If there are two or more *451 policies which provide coverage at the same limits, we will only pay our proportionate share. We will not pay damages to or for any household member who has a Massachusetts auto policy of his or her own or who is covered by a Massachusetts auto policy of another household member providing similar coverage with higher limits.

3. Anyone else while occupying your auto. We will not pay damages to or for anyone else who has a Massachusetts auto policy of his or her own or who is covered by a Massachusetts auto policy of any household member providing similar coverage.

4. Anyone else for damages he or she is entitled to recover because of injury to a person covered under this Part.
We will not pay to or for:
1. You, while occupying an auto you own .. .
2. Anyone injured while occupying your auto while it is being used to carry anyone or anything for a fee
3. Anyone injured while using an auto without the consent of the owner.
(Massachusetts Mandatory Endorsement M-0990S (ed. 1-91)) (emphasis supplied).
Despite Hanover’s contrary argument, the language of these provisions is unambiguous. Damages in the form of underinsurance benefits will be made available to or for a person injured or killed who was a passenger in the policy owner’s car, provided that the injured parly is not covered by either his own Massachusetts automobile insurance policy, or a Massachusetts policy owned by a member of his household. It is undisputed that neither Stephen Hague nor any member of his household owned or was covered by any Massachusetts insurance policy. Under the clear terms of the Hanover policy, then, Stephen Hague falls into the category of claimants who may look to the policy of the owner of the vehicle in which he was injured. In this case, that policy would be the one issued by Hanover.
Whether underinsurance coverage is available to a claimant depends in the first instance on the terms of the policy. See Lumbermens Mut. Cas. Co. v. DeCenzo, 396 Mass. 692, 695 (1986). Massachusetts courts construe the “unambiguous words of an insurance policy according to their ordinary meaning...” Cardin v. Royal Ins. Co. of America, 394 Mass. 450, 456 (1985) (citations omitted). A court will refuse to adhere to the terms of the policy only when they are contrary to the language or purpose of the underinsurance statute. Id. Accord, Amica Mut. Ins. Co. v. Bagley, 28 Mass.App.Ct. 85, 89-91 (1991). See Smart v. Safety Ins. Co., 419 Mass. 144, 149-50 (1994).
Hanover argues that its policy cannot be interpreted in the way just described because the construction conflicts with the language and purpose behind §113L. In particular, Hanover contends that §113L(5) mandates that if the injured party is a named insured under any motor vehicle policy providing underinsurance coverage — a Massachusetts policy or a policy issued in any other state — then the party-may only receive underinsurance benefits from that policy. I disagree.
It is undisputed that §113L is the applicable statute governing uninsured and underinsured motorist coverage in Massachusetts, and that, as Hanover asserts, § 113L(5) is the portion of the statute relevant to this case. Before turning to §113L(5), however, it is useful to look at its preceding subsections. Section 113L(1) begins, “[n]o policy shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . registered in this state unless such policy provides” uninsurance coverage of a prescribed minimum amount; §113L(2) continues that upon election of (and purchase by) the policyholder, the policy shall also provide underinsurance coverage and if the election is made the term “uninsured motor vehicle” in §113L shall include “underinsured” vehicles as well. Section 113L(3) and (4) proceed to deal with obligations and remedies available to insurers providing coverage under the section. Section 113L(5) then follows, and it provides:
(5) Uninsured motorists coverage shall provide that regardless of the number of vehicles involved, whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more vehicles or two or more policies be added together combined or stacked to determine the limits of insurance coverage available to injured persons. An insured who is not a named insured on any policy providing uninsured motorist coverage may recover only from the policy of a resident relative providing the highest limits of such coverage whether or not such vehicle was involved in the accident; provided, however, if there are two or more such policies which provide such coverage at the same limits a pro rata contribution will be made. Any injured occupants who are not named insureds on a policy and who are not insured on a resident relative’s policy may obtain uninsured motorist coverage from the named insured’s policy covering the vehicle they occupy when injured. A person who is a named insured and who suffers bodily injury or death:
(a) while occupying a nonowned motor vehicle registered for highway use may recover only from the policy providing the highest limits of uninsured motorist coverage on which such person is the named insured, provided, however, if there are two or more such policies which provide such coverage at the same limits a pro rata contribution will be made;
(b) while occupying an owned motor vehicle registered for highway use and which had in *452 effect the coverage required by this section shall recover uninsured motorist coverage only from the policy covering such occupied vehicle, provided, however, if there are two or more such policies, a pro rata contribution will be made. An insured who suffers bodily injury or death while occupying a motor vehicle owned by that insured which is registered for highway use and does not have in effect the coverage required by [G.L.c. 90, §34A] may not recover uninsured motorist coverage from any policy. No uninsured motorist coverage shall apply from any policy if a named insured suffers bodily injury or death while occupying an owned motor vehicle registered for highway use being used at the time as a public or livery conveyance and which is not insured for uninsured motorist coverage.
(Emphasis supplied.)
When §113L(5) is read in the context of §113L(1) through (4), it makes sense that the term “policy” in (5) refers to a Massachusetts motor vehicle policy providing uninsured and underinsured coverage under §113L. Starting from the first line of §113L(1), the entire section is devoted to defining the terms and conditions of underinsurance and uninsurance coverage to be provided in Massachusetts policies, and the obligations and rights of insurers offering those Massachusetts policies. To read “policy” as Hanover argues, to mean a policy issued by a motor vehicle insurer in Virginia and anywhere else in the United States (or indeed, the world) does not fit with the thrust of the statute as a whole, which is clearly focused on Massachusetts coverage alone.
The same conclusion becomes obvious by examining §113L(5) itself. Section 113L(5)(a) states that a person who qualifies as a “named insured” and who is injured or killed while a passenger or driver in a nonowned vehicle may recover only from “the policy providing the highest limits of uninsured motorist coverage on which such person is the named insured . . .’’If Hanover’s expansive reading of “policy” were adopted, the result in this case would be — as Hanover argues it should be[7] — that Stephen Hague, a Virginia resident owning two Virginia motor vehicle policies and named as a household member on a third, is restricted by Massachusetts law to recover only from State Farm,[8] even though (1) all parties appear to agree that Virginia law governs the construction of Hague’s Virginia policies;[9] and (2) under the express terms of Virginia law, Stephen Hague or his estate is permitted to “stack”[10] policies for increased coverage.[11] Just to set out the argument illustrates its effective impossibility. Virginia and many other states, if not every other, have in effect their own laws governing uninsured and underinsured motorists coverage offered in those states. On grounds of both policy and pure legal authority, it borders on the ludicrous to ascribe to the Massachusetts Legislature the intent of arrogating to itself the power to dictate what residents of all other states with insurance policies issued in their own states are entitled to recover by way of uninsurance or underinsurance benefits under their own policies if by chance they are injured or killed while in a car driven in Massachusetts and covered by a Massachusetts insurance policy.[12]
In light of the language and provisions set out in §113L(5), the only reasonable construction to give the section is to read it as referring and applying solely to Massachusetts policies, a path that avoids all the hazards of interfering with the various laws and insurance policies of other states. See Goodman v. American Cas. Co., 419 Mass. 138, 142 (“[ujninsured and underinsured motorist claims are made to one’s own insurer if the claimant or a household member has a Massachusetts automobile policy”). Compare Dullea v. Safety Ins. Co., 424 Mass. 37, 38, 40-41 (1997) (since plaintiff was “the named insured on a Massachusetts automobile insurance policy,” she could not make claims to underinsurance coverage under a household member’s policy or the policy covering the car in which she was injured, since her own policy offered some underinsurance benefits).[13] When this is done, the terms of §113L(5) are plain as they pertain to the undisputed facts of this case: Stephen Hague fits squarely -within the class of “injured occupants who are not named insureds on a [Massachusetts] policy and who are not insured on a resident relative’s [Massachusetts] policy [and who therefore] may obtain uninsured motorist coverage from the named insured’s [Massachusetts] policy covering the vehicle they occupy when injured.” §113L(5), third sentence. That Massachusetts policy, of course, is the one issued by Hanover for the car owned by Nancy Kane. The terms of the statute are thus wholly congruent with the unambiguous provisions of the Hanover policy issued to Kane, removing any issue about the effect of the supposed conflict between them.[14]
It is certainly true, as Hanover contends, that the purpose behind the statute (St. 1988, c. 273) which enacted §113L(5) was to reform the automobile liability insurance system in a way to lower rates for the consumer while providing effective but reduced coverage. See, e.g., Dullea v. Safety Ins. Co., supra, 424 Mass. at 39; Hanover Ins. Co. v. Pascar, 421 Mass. 442, 445 (1995); Plymouth Rock Assurance Corp. v. McAlpine, 32 Mass.App.Ct. 755, 756 (1992). The prohibition against stacking underinsurance coverage which is a cornerstone of §113L(5) is an integral part of this plan. See Goodman v. American Cas. Co., supra, 419 Mass. at 140-41. See also Smart v. Safety Ins. Co., 419 Mass. 144, 148-49 (1994) (under 1988 revisions to motor vehicle insurance laws, legislature provided that uninsurance and underinsurance coverage would be available under one policy). Hanover paints a dire picture of a “vast class of vehicle occupants [from other states] who could demand recovery from Massachusetts insurers ... [even though their out-of-state policies may provide coverage]”[15] if §113L(5) is construed to require *453 that Hanover make the underinsurance coverage provided by the Kane policy available to the plaintiffs in this case. The feared enormity of the class would seem more the product of a fertile imagination than a realistic view of probabilities. In any event, there is nothing in the discussion of purpose in St. 1988, c. 273, §1 or in other provisions of that law which suggest that the Legislature intended to reach policies other than those issued in Massachusetts as part of its cost-cutting reform efforts. The result reached in this case — obligating Hanover to make its policy available — is consistent with the purposes of §113L(5) since no stacking of coverage in Massachusetts policies will occur and only one Massachusetts policy has been called into play. That Virginia chooses to make stacking available to its Virginia policy holders is irrelevant.
B. Hanover’s Payment of Medical Expenses
The Hanover policy provides $5000 in “medical payments” benefits to cover “reasonable expenses for necessary medical and funeral services incurred as a result of an accident,” and in particular “will pay for expenses resulting from bodily injuries to anyone occupying” the insured motor vehicle at the time of the accident. (Hanover policy, Part 6.) The plaintiffs claim that pursuant to the language of the policy and in accordance with Allstate Ins. Co. v. Bearce, supra, 412 Mass. at 444, they are entitled to receive the lull $5000 of medical payments benefits despite having received $20,000 from Safely under its liability policy covering Matanza, and regardless of any underinsurance benefits which Hanover may ultimately be obligated to pay them. Hanover does not appear to dispute this position, and I agree that this is the result dictated by the Bearce case. See id. at 447-49.
Accordingly, the plaintiffs are entitled to partial summary judgment against Hanover on their claims concerning underinsurance and medical payments coverage.
II. State Farm and Regal A. Underinsurance Liability
Given that Hanover must make the underinsurance coverage in its policy available to the plaintiffs, the next issue is whether State Farm and Regal are also liable. Plaintiffs, State Farm and Regal agree that Virginia law applies to the three policies issued by the Virginia insurers, and under that law, Hanover is primarily liable for underinsurance coverage, while State Farm and Regal are secondarily liable.
According to both the State Farm and Regal policies, first Hanover must make its underinsurance coverage available to the plaintiffs, and State Farm and Regal must cover any excess claims.[16] Under Virginia law, incorporated by both the State Farm and Regal policies, an insured may “stack” underinsured motorist coverage in the following order or priority:
1. The policy insuring the vehicle occupied at the time of the accident;
2. The policy issued to the named insured;
3.the policy issued to a household member of the insured person.
Virginia Code §38.2-2206(B). Pursuant to the statute, Hanover falls into the first category; State Farm and Regal into the second; and USAA into the third. Although the plaintiffs maintain that because the damages exceed the limits available under Hanover’s primary insurance policy, State Farm and Regal may not delay payment, the “excess insurance” provision in each insurer’s policy directs State Farm and Regal to pay only after the primary insurer, i.e., Hanover, pays its share.
B. The $20,000 Setoff
There may be a dispute among the parties over the issue of how the $20,000 the plaintiffs received from Safety, insurer of the Matanza vehicle, should be set off in relation to the underinsurance coverages that are available under the various policies at issue here. Regal and State Farm contend that the full $20,000 is to be set off against any underinsurance liability of Hanover, and they do not appear to address whether they are also entitled to a setoff. Their own policies and the Virginia statute would appear to entitle them to one. (See Virginia Code §38.2-2206(G); plaintiffs’ ex. Q., p. 19; plaintiffs’ ex. S, p. 9.)[17]
It does not seem any party disputes the twin propositions that (1) the $20,000 received from Safety must be set off in some manner against the available underinsurance benefits; and (2) there should be only one setoff— that is, each insurer liable to provide underinsurance coverage is not entitled to its own $20,000 setoff. I leave determination of the exact manner in which the setoff should be accomplished for another day, as no party has adequately addressed it in the various memoranda on file, and it should be a matter on which agreement among the parties can be reached.
III. USAA
A. Underinsurance Liability
The plaintiffs claim that USAA is obligated to make the underinsurance benefits in its policy available to them under Virginia law and the terms of the policy itself. USAA disputes this contention and argues affirmatively that it is entitled to summary judgment because plaintiffs have failed to obtain a final, court-ordered judgment against the alleged tortfeasor. Virginia Code §38.2-2206(H) provides as follows:
No endorsement or provisions providing the [under-insured] coverage required by . . . this section shall require arbitration of any claim arising under the endorsement or provisions, nor may anything be required of the insured except the establishment of legal liability, nor shall the insured be restricted or prevented in any manner from employing legal counsel or instituting legal proceedings.
(Emphasis supplied.) In addition, the USAA policy provides the process by which legal liability is determined.[18] USAA claims that the insured is legally entitled to recover damages from the owner or operator *454 of an uninsured or underinsured motor vehicle only if legal liability is established by a judgment. I agree with the plaintiffs’ position (subject to the Virginia law’s order of priority), and disagree with USAA.
The terms of the USAA policy are very plain. See Nationwide Mutual Insurance Co. v. Hill, 247 Va. 78, 83 (1994). If USAA had intended to require that its claimants obtain judgments establishing liability against the tortfeasor or owner of the underinsured vehicle, then the language in the policy would have so indicated. Moreover, although the plaintiffs’ action against Matanza was ultimately dismissed with USAA’s knowledge and without any objection by USAA being filed, Matanza was neither released from liability nor released from prison.
USAA is bound by the provisions of its insurance policy, given that it does not conflict with the governing statute. There is nothing set out anywhere in the policy which obligates the plaintiffs to have obtained a judgment against Matanza as a condition precedent to seeking underinsurance coverage from USAA.[19] Since it is undisputed that Stephen Hague was a household member of his father, the plaintiffs are entitled to partial summary judgment on their claim against USAA.[20]
B. Seat Belt Benefits Liability
Plaintiffs also assert that under the USAA policy, as beneficiaries of an insured who died as the direct result of bodily injury sustained in an automobile accident while wearing a seatbelt, they are entitled as a matter of law to $10,000.[21] This aspect of the plaintiffs’ summary judgment motion must be denied, since the plaintiffs have not established as an undisputed fact that Stephen Hague was wearing a seat belt at the time of his accident.
IV. Unfair or Deceptive Conduct and Unfair Settlement Practice Claims
In counts I and II of their complaint, the plaintiffs allege that all four defendants violated G.L.c. 93A and c. 176D. Each defendant insurance company has filed a motion for summary judgment claiming that as a matter of law, the unfair or deceptive practice and settlement practice claims should be dismissed.
I agree with the plaintiffs that at least with respect to Hanover, summary judgment on the c. 93A and c. 176D claims is inappropriate. In Hanover’s case, as “vexing” as issues concerning the application of §113L(5) may be, see Riley v. Aetna Life & Cas. Co., 31 Mass.App.Ct. 910 (1991), Hanover’s position has arguably been unreasonable from the start. The same cannot be said of the Virginia insurers (although it is a closer question in connection with USAA). State Farm and Regal have had their collective legal position adopted; while the plaintiffs argue these insurers should have engaged in settlement negotiations given their agreement that their policies were implicated, this ignores the position of Hanover, which had to be resolved before State Farm and Regal would know where they stood. In sum, there is nothing in the record to suggest a genuine issue of fact concerning any unfair or deceptive conduct or unfair settlement practice on their part. Both State Farm and Regal should be granted summary judgment.
USAA took a different position than the other Virginia insurers, and one that turned out to be incorrect. Nonetheless, I discern no evidence of bad faith or ulterior motive on USAA’s part, and its erroneous legal position in the circumstances does not translate into unfair or deceptive conduct or settlement practice. See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 14-15 (1989). See also Guity v. Hanover Ins. Co., 36 Mass.App.Ct. 339, 343 (1994). USAA, too, is entitled to summary judgment on the plaintiffs’ claims under G.L.c. 93A and c. 176D.
ORDER
For the foregoing reasons, the plaintiffs’ motion for partial summary judgment is allowedwith respect to (a) their claims concerning underinsurance liability on the part of Hanover, State Farm, Regal and USAA, and (b) their claims concerning Hanover’s liability for medical payments, and is otherwise denied; the cross-motion for summary judgment of State Farm and Regal is allowed; the cross motion for summary judgment of USAA is allowed with respect to the plaintiffs’ claims under G.L.c. 93A and c. 176D. and otherwise denied; and Hanover’s cross-motion for summary judgment is denied.

 State Farm and Regal have filed a joint opposition to the plaintiffs’ summary judgment motion and a joint cross motion.

 The record reveals that Matanza drove through a red light and smashed into the right passenger side of the Kane vehicle. At the time, Matanza was operating a vehicle with a stolen license plate, without a license, and was fleeing from police officers. After the accident, Matanza again fled the scene until police apprehended and arrested him on a myriad of charges including vehicular homicide, leaving the scene of a fatal accident, the failure to stop for a police officer, speeding, operating to endanger, failure to conform to a red light, attaching plates for the concealment of the identity of a motor vehicle, receiving stolen property, and operating a motor vehicle after the revocation of his license. Matanza pled guilty to the charges on February 24, 1994, and currently is serving a six to ten year prison sentence.

 There has been no substantive change in the provisions of §113L between 1988 and the present.

 The exceptions concern USAA’s asserted dispute about whether Hague was wearing a seat belt at the time of the fatal accident and the plaintiffs’ claimed factual disputes concerning the defendants’ liability under G.L.c. 93A and c. 176D.

 See Hanover’s Memorandum In Reply To The Plaintiffs’ Motion For Partial Summary Judgment And In Support Of Hanover’s Cross Motion For Summary Judgment, pp. 10-15 (hereafter referred to as Hanover memorandum).

 This is so because the Regal policy — the other Virginia policy on which Hague was a named insured — offers a lower limit of underinsurance coverage than State Farm’s. See §113L(5).

 See Searls v. Standard Accident Ins. Co., 316 Mass. 606, 608 (1944) (insurance contracts must be interpreted according to the law of the place where the contract is made). Certainly in Massachusetts, judicial opinions appear to assume without discussion that Massachusetts law will govern the interpretation of a Massachusetts motor vehicle insurance policy even when the accident at issue occurs outside of the Commonwealth. See, e.g., Vatarella v. Hanover Ins. Co., 409 Mass. 523 (1991) (accident occurred at unidentified location between Winter Haven, Florida and Brockton, Massachusetts): Heinrich-Grundy v. Allstate Ins. Co., 402 Mass. 810 (1988) (accident occurred in the Bahamas).

 “Stacking is where a claimant adds all available policies together to create a greater pool in order to satisfy his actual damages." Cardin v. Royal Insurance Co. of America, 394 Mass. 450, 456 n.7 (1985) (quoting 12AM.S. Rhodes, Couch’s Cyclopedia of Insurance Law, §45:651, at 207 (2d ed. rev. 1981)).

 See Virginia Code, §38.2-2206(B).

 The fatal defect in Hanover’s position is perhaps even more plainly (albeit hypothetically) illustrated by looking at §113L(5)(b). This subsection provides in part that if a person who is a named insured on a policy should be injured or killed while occupying a car that is (a) owned by the person, and (b) does not have the mandatory motor vehicle insurance coverage prescribed by G.L.c. 90, §34A, thatperson is not to recover uninsured or underinsured benefits under any policy. Hanover’s reading of §113L(5) would classify Stephen Hague, or indeed any out-of-state resident with a motor vehicle policy from that state, as a “named insured” on a “policy” and therefore subject to the restrictions of §113L(5)(b). However, a driver from another state with motor vehicle insurance governed by that state would have no reason to insure any car he owned in accordance with the Massachusetts laws on compulsory motor vehicle insurance. If that driver should have the misfortune of being injured or killed while driving his own car in Massachusetts, and if he did not have insurance meeting Massachusetts requirements, Hanover would interpret §113L(5)(b) to preclude his qualifying for any uninsurance or underinsurance coverage at all, regardless of the insurance laws of his own state and the terms of his own policy.

 With one exception, the cases cited and discussed by Hanover to support its construction of § 113L(5) deal with parties owning or accidents involving only Massachusetts automobile insurance policies, and thus they never reach directly the issue raised here, viz., the application of the anti-stacking and ordering provisions of §113L(5) to a person with non-Massachusetts policies. The Goodman case is one of these, but the quoted language in the text is interesting in that it suggests the court’s assumption that §113L(5) concerns only Massachusetts policies. (The same assumption appears to be made in the very recent Dullea case cited in the text.) The exception to this line of cases is Amica Must. Ins. Co. v. Bagley, 28 Mass.App.Ct. 85 (1989), a case considering whether an injured passenger was entitled to recover under-insurance benefits under a Massachusetts policy without any reduction on account of PIP benefits paid under a New York policy covering the tortfeasor. The Bagley case was concerned with a version of § 113L which predates the 1988 amendments that inserted §113L(5) into the section, and made several other substantive and language changes to the statutory uninsurance-underinsurance scheme. More to the point, in Bagley, both parties agreed that under §113L(4), the insurer was entitled to offset the liability coverage received by the plaintiff under the New York policy against any award of underinsurance benefits to the plaintiff under a Massachusetts policy. 28 Mass.App.Ct. at 86-87 and n.5. The question was whether the PIP benefits the plaintiff also received under the New York policy should be offset as well. The court in Bagley concluded that the provisions of then-existing §113L (1) and (4) should be interpreted to include PIP benefits as part of the liability coverage and therefore subject to offset, and contrary provisions of the Massachusetts insurance policy would have to give way to avoid double recovery. Id. at 88-89, 89-91. This is a very distinct question from whether an out-of-state policy offering underinsurance coverage should be treated in the same manner as a Massachusetts policy under §113L(5), thereby rendering unavailable (in this case) the only Massachusetts policy involved.

 The Hanover policy is the standard Massachusetts automobile insurance contract approved by the commissioner of insurance. As the language of that contract reflects, the commissioner has interpreted the anti-stacking and ordering of claims in § 113L(5) to apply only to Massachusetts policies. To the extent the statute itself may leave the definition of “policy” at all open, the commissioner’s resolution in the standard form automobile insurance contract is consistent with “his power to express the scope of insurance coverage when the statutory purpose is apparent, but a technical application of the statute exposes a gap or previously unconsidered point.” Hanover Ins. Co. v. Pascar, 421 Mass. 442, 446 (1995). See Colby v. Metropolitan Property & Cas. Ins. Co., 420 Mass. 799, 806 (1995) (“... the commissioner’s interpretation of the relevant statutes, although not controlling, is entitled to deference”). While the commissioner’s interpretation will not be followed when it contravenes the plain terms of the statute, see, e.g., Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 287 n. 9 (1991), as the discussion in the text above indicates, there is no contravention here.

 Hanover memorandum, p. 16.

 Both State Farm and Regal’s policies contain the following identical language:
In consideration of the payment of premium . . . the company agrees with the named insured as follows: The company will pay in accordance with Section 38.2-2206 of the Code of Virginia and all Acts amendatory thereof or supplementary thereto, all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured [or underinsured] motor vehicle because of bodily injury sustained by the insured . . . caused by accident and arising out of the ownership, maintenance or use of such uninsured [or underinsured] motor vehicle.
Both policies also state the following:
With respect to bodily injury to an insured while occupying a motor vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance . . .

 Hanover does not appear to address the issue at all.

 The USAA policy states as follows:
... for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company . . .
No judgment against any person or organization alleged to be legally responsible for the bodily injuxy shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

 It bears noting that while State Farm and Regal are also Virginia insurers with policies governed by Virginia law, neither claims here that a judgment against Matanza is required.

 The plaintiffs do not appear to dispute that under Virginia law and the USAA policy, the underinsurance coverage provided by USAA only comes into play if and when the benefits provided by Hanover, State Farm and Regal are exhausted.

 The USAA policy provides the following, in pertinent part:
Seat Belt Benefits Coverage These benefits are payable, at the time of the accident. . . the insured was:
1. wearing a seatbelt, or . . .
DEATH BENEFIT The Company will pay $10,000 to the beneficiary of an insuredwho dies as the result of bodily injury sustained in an automobile accident. [Emphasis in original.]